IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SHAWN D. BUTLER,

                    Plaintiff,

          v.                          Civil No. 09-3252(NLH)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,                             **OPINION**
                    Defendant.

**APPEARANCES:**

ABRAHAM S. ALTER
JAMES LANGTON
LANGTON & ALTER, ESQS.
2096 ST. GEORGES AVENUE
PO BOX 1798
RAHWAY, NJ 07065

          *On behalf of Plaintiff*

MICHELLE LYNN CHRIST
UNITED STATES ATTORNEY'S OFFICE - DISTRICT OF NEW JERSEY
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278

          *On behalf of Defendant*

**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of

Plaintiff for Disability Insurance Benefits and Supplemental

Security Income ("Social Security benefits") under Title II and

Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.

The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, August 11, 1998.[1]  For the reasons stated below, this Court will reverse that decision and remand the matter for further proceedings.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits, claiming that as of August 11, 1998, he could no longer work as a skycap ticketing checked baggage at Newark International Airport, where he was employed for 16 years.  Plaintiff claims that he is completely disabled and unable to work due to blindness in his left eye, an amputated left thumb, a seizure disorder, chronic active Hepatitis C, inter-cerebral arterial venous malformation (AVM), degenerative joint disease, and psychosis.

On September 5, 2002, Plaintiff filed a renewed[2] application for disability benefits, and on January 27, 2003, Plaintiff filed an application for SSI.  A hearing was then held before an ALJ on

---

[1]Plaintiffs's coverage period was from August 1998 through December 31, 2003.  The procedural history that follows in the body of this opinion and footnote 2, <u>infra</u>, explains how Plaintiff came to file this appeal in July 2009.

[2] Plaintiff first filed for disability benefits in August 1998.  His application was denied initially and on reconsideration.  The Appeals Council remanded for a new hearing but later affirmed a post-hearing denial of benefits.  Instead of appealing that decision to the district court, Plaintiff filed a new application for SSI and disability benefits in September 2002 and January 2003 respectively.

March 16, 2006, and on September 19, 2006, the ALJ issued his
decision denying Plaintiff's applications.  Plaintiff appealed
that decision, and the Appeals Council held the record open so
that Plaintiff could provide more evidence.  On May 1, 2009, the
Appeals Council summarily affirmed the ALJ's decision.  Plaintiff
now seeks this Court's review.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for Disability Insurance Benefits.  Ventura v.
Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must
uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams
v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial
evidence means more than "a mere scintilla."  Richardson v.
Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co.
V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  Id.  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  See Brown v. Bowen,

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to determine

4

whether the conclusions reached are rational.
Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an
ALJ, as the fact finder, must consider and evaluate the medical
evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no
requirement that the ALJ discuss in its opinion every tidbit of
evidence included in the record," Hur v. Barnhart, 94 Fed. Appx.
130, 133 (3d Cir. 2004).  In terms of judicial review, a district
court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder." Williams, 970 F.2d at
1182.  Moreover, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the proper
legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker,
721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp.
791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of
an entitlement to a period of disability and disability insurance
benefits as the inability to engage in any substantial gainful
activity by reason of any medically determinable physical and/or
mental impairment which can be expected to result in death, or
which has lasted or can be expected to last for a continuous
period of not less than 12 months. See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such

5

severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

6

therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability. (Step One). The ALJ next found that Plaintiff's six major impairments--seizure disorder, left-eye blindness, left-thumb amputation, Hepatitis C, depression, and cognitive limitations-- were severe (Step Two). The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three), and that he was capable of performing past relevant work (Step Four). Despite the finding that Plaintiff could still work as a skycap, the ALJ continued to Step Five, where he found that

7

Plaintiff had the residual functional capacity (RFC) to perform a restricted range of light level exertional work, which jobs are in significant numbers in the national economy.

Plaintiff presents four arguments for review: (1) the ALJ erred at Step Three by failing to consider all his impairments in combination; (2) the ALJ improperly rejected all the medical evidence in the case and did not explain his conclusion as to Plaintiff's RFC; (3) the ALJ erred in determining that Plaintiff could perform his past work and came to his own conclusion regarding Plaintiff's condition; and (4) the ALJ erred in the hypothetical posed to the vocational expert ("VE").

As explained below, the Court finds that the ALJ erred in his Step Three analysis, and will remand the matter for further consideration by the Commissioner.  Because the Step Three analysis is sequential, and a reconsideration of Step Three may obviate or otherwise affect the final two steps, the Court will not consider Plaintiff's other arguments.

**1.   The ALJ erred in his Step Three analysis**

In the third step of the sequential step analysis, the ALJ must consider the severity of the claimant's impairments and must check to see if the impairments meet or equal one of the impairments listed in Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii) (the "Listings").  The ALJ can find medical equivalence in three ways:

(1)(I) If you have an impairment that is described in

appendix 1, but-

> (A) You do not exhibit one or more of the findings
> specified in the particular listing, or
> (B) You exhibit all of the findings, but one or
> more of the findings is not as severe as specified
> in the particular listing,

(ii) We find that your impairment is medically
equivalent to that listing if you have other findings
related to your impairment that are at least of equal
medical significance to the required criteria.

(2) If you have an impairment(s) that is not described
in appendix 1, we will compare your findings with those
for closely analogous listed impairments. If the
findings related to your impairment(s) are at least of
equal medical significance to those of a listed
impairment, we will find that your impairment(s) is
medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of
which meets a listing (see § 404.1525(c)(3)), we will
compare your findings with those for closely analogous
listed impairments. If the findings related to your
impairments are at least of equal medical significance
to those of a listed impairment, we will find that your
combination of impairments is medically equivalent to
the listing.

20 C.F.R. § 404.1526(b).

If the claimant is successful in demonstrating that his

impairments meet or equal one of the Listings and meets the

duration requirement (continuous period of 12 months), then the

claimant is found to be disabled.  20 C.F.R. §

404.1520(a)(4)(iii).  The claimant bears the burden of proving

that his impairments equal or meet those listed in Appendix 1,

but if a claimant's impairments do not match one of the Listings,

the ALJ is required to perform a comparison between the

claimant's impairments and those listed in Appendix 1.  20 C.F.R. § 404.1526(b).  Additionally, the ALJ is required to assess a claimant's physical and mental conditions in combination.  20 C.F.R. § 404.1523.[3]  The Third Circuit has held that it is the ALJ's "responsibility . . . to identify the relevant listed impairment(s)" and "'develop the arguments both for and against granting benefits.'"  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 n.2 (3d Cir. 2000) (quoting Sims v. Apfel, 530 U.S. 103, 111 (2000)).

In this case, the ALJ determined that Plaintiff's impairments--left-eye blindness, left-thumb amputation, seizure disorder, Hepatitis C, and mental impairments--individually did not meet or equal one of the impairments listed in Appendix 1. The ALJ found that:

1.   Plaintiff's partial blindness did not meet Listing 2.02

---

[3] This provision provides,

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523.

10

(Loss of Visual Acuity)because his "[r]emaining vision in the better eye after best correction" is not "20/200 or less";

2. Plaintiff's thumb amputation did not meet Listing 1.02 (Major dysfunction of a joint(s));[4]

3. Plaintiff's seizure disorder did not meet Listing 11.02 (Epilepsy - convulsive epilepsy (grand mal or psychomotor)) or Listing 11.03 (Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal));

4. Plaintiff's Hepatitis C did not meet Listing 5.05 (Chronic liver disease); and

5. Plaintiff's mental limitations did not meet Listing 12.02 (Organic mental disorders).[5]

R. at 18, 23.)

There are two flaws in this analysis.  First, the ALJ failed to appropriately explain how several of Plaintiff's impairments did not satisfy the listings.  For example, with regard to Plaintiff's seizures, uncontroverted medical evidence from state agency consultative physicians documents his seizure disorder, as

---

[4]A description of the relevant Listings criteria is found in the attached Appendix.

[5]The ALJ did not consider Plaintiff's mental impairment in his Step Three analysis, and instead indicated those relevant Listings would be "evaluated below" during his consideration of Plaintiff's testimony and the medical evidence.  (R. at 18.)

11

well as the presence of a left frontal cortical arteriovenous malformation (AVM), which may be the cause of his seizures.  The ALJ fails to specifically compare Plaintiff's seizure disorder and AVM with the criteria of Listings 11.02 and 11.03, and instead simply makes a conclusion that they do not qualify. Additionally, although there are conflicting reports as to the frequency of Plaintiff's seizures, and although there is evidence that Plaintiff was not compliant with his anti-seizure medication Diantin[6], there is medical evidence indicating that even full compliance with his medication may not necessarily prevent seizures.[7]  The ALJ does not address that finding--or most of the medical records concerning Plaintiff's seizures and AVM--in making his determination that Plaintiff's seizure disorder and AVM do not qualify as a Listing impairment.[8]

---

[6]Plaintiff reported to numerous medical sources that his non-compliance with his Diantin regimen was due to his inability to pay for the medication.  It appears that at some point he was able to obtain the generic form of Diantin and resume taking it. (R. at 282.)

[7]Plaintiff testified that his doctor advised him that there may still be bullet fragments in his brain from when he was shot in the eye.  (R. at 22.)  It is unclear whether this claim is documented in the medical evidence.  Documentation that Plaintiff's AVM is causing his seizures is contained in the record.

[8]A consultative doctor notes in March 2004 that "in regard to the seizure disorder, claimant should avoid precarious situations where a seizure can be detrimental to him or to others."  (R. at 287.)  The doctor continued, "In fact, he requires constant observation for both his seizure disorder and his mental situation."  (Id.)

Similarly, the ALJ concludes that Plaintiff's chronic Hepatitis C, for which he receives weekly interferon injections, is not a qualifiable impairment, without any explanation.  The Listing for chronic liver conditions is very detailed, specific, and technical, yet no where in the ALJ's decision does he explain why Plaintiff does not qualify under the Listing, other than to state that Plaintiff's Hepatitis C is "minimally active (grade 1)."  (R. at 20.)  It may seem that a disease that is "minimally active" cannot be totally disabling, but that terminology as it describes a chronic, incurable liver disease, cannot be interpreted in such layman's terms.  See Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (explaining that an ALJ "may not make speculative inferences from medical reports").

With regard to Plaintiff's mental impairments, the ALJ provided some analysis, but in doing so, he discounted most of the medical records that evidenced Plaintiff's mental limitations.  (See R. at 23.)  The ALJ rejected the opinions of two consultative psychologists that showed Plaintiff's psychosis and low IQ, and he rejected the state agency's assessments that concluded that Plaintiff suffered from multiple marked and moderate limitations in various areas of mental functioning.  He also found Plaintiff's own testimony not to be credible.  To explain why he was rejecting the bulk of the evidence, the ALJ simply adopted an August 20, 2004 consultative evaluation, of the

13

check-the-box, document-review-only variety, that found Plaintiff
had only slight mental limitations due to inconsistencies in the
record.  (R. at 330.)  The ALJ fails to fully articulate why
Plaintiff does not meet Listing 12.02 (Organic mental disorders).
(See attached Appendix.)  Additionally, despite two IQ
assessments of 52 and 60, the ALJ does not explain why Plaintiff
does not meet Listing 12.05 (Mental retardation), which provides
for a finding of disability for a "valid verbal, performance, or
full scale IQ of 59 or less," or a "valid verbal, performance, or
full scale IQ of 60 through 70 and a physical or other mental
impairment imposing an additional and significant work-related
limitation of function."

In evaluating medical reports, the ALJ is free to choose the
medical opinion of one doctor over that of another, but "[w]hen a
conflict in the evidence exists, the ALJ may choose whom to
credit but cannot reject evidence for no reason or for the wrong
reason.  The ALJ must consider all the evidence and give some
reason for discounting the evidence she rejects." Diaz v.
Commissioner of Social Sec., 577 F.3d 500, 505-06 (3d Cir. 2009)
(citations omitted).  Here, the ALJ states that Plaintiff's
"extensive limitations" documented in the bulk of medical
evidence "are not supported in the record by credible evidence."
(R. at 24.)  It is questionable how one consultative report
adopted by the ALJ constitutes the whole of the credible evidence

on the record.  See Morales, 225 at 317-18 (explaining that an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion").

Overriding these concerns with the ALJ's analysis of whether Plaintiff's impairments are individually debilitating, however, is the second flaw with his Step Three analysis--the ALJ's failure to consider all of these impairments in combination. Even if the ALJ had properly evaluated and expressly articulated why none of Plaintiff's six impairments individually qualified as a Listing impairment, the ALJ should have also considered whether a man who is indisputably blind in one eye, has a missing thumb, has recurring seizures and a brain malformation, has incurable chronic liver disease requiring weekly intravenous medication, and who has some degree of mental impairment, is disabled under the Listings.  20 C.F.R. § 404.1526(b).  The ALJ's failure to do this constitutes reversible error.

The same issue has been addressed in numerous cases, with one more recent unpublished Third Circuit opinion being particularly on point.  In Torres v. Commissioner of Social Security, 279 Fed. Appx. 149, 152 (3d Cir. 2008), the plaintiff suffered from diabetes, Hepatitis C, back problems, headaches, chronic bronchitis, left-eye blindness, glaucoma, depression, anxiety, bipolar disorder, and personality disorder.  The ALJ

15

explained why the plaintiff's impairments did not meet the
Appendix 1 Listings individually, but he failed to conduct a
proper 20 C.F.R. § 404.1526(b) analysis as to their combined
effect.  Torres, 279 Fed. Appx. at 152.  Citing Burnett v. Comm'r
of Soc. Sec., 220 F.3d 112 (3d Cir. 2000), the Torres court
reiterated that an ALJ is required to set forth the reasons for
his decisions, and conclusory statements are "beyond meaningful
judicial review."  Id.  The court in Torres concluded,

> There is no way to review the ALJ's decision in this
> case because no reasons were given for his conclusion
> that Torres' impairments in combination did not meet or
> equal an Appendix 1 listing.  On remand, the ALJ shall
> fully develop the record and explain his findings at
> step three, including an analysis of whether and why
> Torres' diabetes, Hepatitis C, back problems,
> headaches, chronic bronchitis, left-eye blindness,
> glaucoma, depression, anxiety, bipolar disorder, and
> personality disorder in combination, are or are not
> equivalent in severity to one of the listed
> impairments.

Id.

This Court echos that finding in the case here.  Without any
explanation as to how all of Plaintiff's documented impairments
in combination affect his ability to work, the Court cannot
determine whether the ALJ's Step Three determination is correct.
The ALJ's sole conclusory statement that Plaintiff "does not have
an impairment or combination or impairments" that meets the
Listings is not enough.  (R. at 18.)  Moreover, because the
analysis of a disability application is a sequential process, and
the analysis has stalled at Step Three, the Court cannot

16

determine whether the ALJ was correct in assessing the fourth and fifth steps, or whether the ALJ's ultimate conclusion that Plaintiff is not totally disabled is supported by substantial evidence.  Indeed, if upon remand it is found that Plaintiff's impairments in combination meet an Appendix 1 Listing, there will be no need to continue on to the final two steps.  Conversely, a proper explanation as to why Plaintiff does not have a Step Three impairment or combination of impairments could mostly likely also affect the analysis of the other two sequential steps.  Consequently, the case must be remanded so that the Commissioner can fully complete the Step Three analysis.

On a related matter, Plaintiff requests that instead of remanding the case to the Commissioner for further consideration, this Court should order the Commissioner to immediately pay Plaintiff his benefits.  This request is based on the presumption that it is clear that Plaintiff meets an Appendix 1 Listing.  It is also based on the fact that Plaintiff has been waiting for benefits since his initial application twelve years ago.

Although there is a basis in the law that allows a district court to order the payment of benefits instead of remanding the case for further review, and extraordinary delay is one of those circumstances, a district court must also be certain that a plaintiff is entitled to those benefits.  See Gilliland v. Heckler, 786 F.2d 178, 184-85 (3d Cir. 1986) (citations omitted)

17

(explaining that the decision to direct the "award of benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits"); see also INS v. Ventura, 537 U.S. 12, 16 (2002) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

In this case, although the Court is sensitive to the length of time Plaintiff's application has spent in the administrative process, the Court cannot independently determine whether his impairments, individually or in combination, meet the technical specifications of the Appendix 1 Listings.  Furthermore, although the ALJ provided a detailed recitation of the medical evidence and of Plaintiff's testimony, and this Court has thoroughly performed an independent review of the record, both of which reveal inconsistencies, to the extent that a Step Three determination relies upon a weighing of Plaintiff's credibility in his statements to his physicians and to the ALJ during the administrative hearings, the Court is not in the position to make such findings as to Plaintiff's credibility.  Williams, 970 F.2d at 1182 (explaining that a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder").

18

The Court recognizes that Plaintiff has been waiting a long time for a final decision on his disability benefits, and believes that the Commissioner would also like to see Plaintiff's application come to its final resolution.  Accordingly, the Court is confident that upon remand, the Commissioner will provide a prompt determination, in accord with this Opinion, as to Plaintiff's benefits application.

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff's impairments did not render him totally disabled at Step Three in the sequential step analysis is not supported by substantial evidence.  Even though the ALJ may ultimately come to the same conclusion upon reconsideration of Plaintiff's application, the ALJ must properly support his decision with medical evidence and complete the Step Three analysis by fully considering Plaintiff's impairments individually and in combination.  Accordingly, the decision of the ALJ is reversed, and the matter shall be remanded.  An accompanying Order will be issued.


Date: September 28, 2010              s/ Noel L. Hillman

At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

19

**APPENDIX**

**Listing 1.02** Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; OR B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

**Listing 5.05**, Chronic liver disease, is a qualifying impairment as long as one of the following criteria are met:

> A. Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood. Consider under disability for 1 year following the last documented transfusion; thereafter, evaluate the residual impairment(s).
> OR
> B. Ascites or hydrothorax not attributable to other causes, despite continuing treatment as prescribed, present on at least 2 evaluations at least 60 days apart within a consecutive 6-month period. Each evaluation must be documented by:
>> 1. Paracentesis or thoracentesis; or
>> 2. Appropriate medically acceptable imaging or physical examination and one of the following:
>>> a. Serum albumin of 3.0 g/dL or less; or
>>> b. International Normalized Ratio (INR) of at least 1.5.
> OR
> C. Spontaneous bacterial peritonitis with peritoneal fluid containing an absolute neutrophil count of at least 250 cells/mm3.
> OR
> D. Hepatorenal syndrome as described in 5.00D8, with on of the following:
>> 1. Serum creatinine elevation of at least 2 mg/dL;

20

or
2. Oliguria with 24-hour urine output less than
500 mL; or
3. Sodium retention with urine sodium less than 10
mEq per liter.
OR
E. Hepatopulmonary syndrome as described in 5.00D9,
with:
1. Arterial oxygenation (PaO2) on room air of:
a. 60 mm Hg or less, at test sites less than
3000 feet above sea level, or
b. 55 mm Hg or less, at test sites from 3000
to 6000 feet, or
c. 50 mm Hg or less, at test sites above 6000
feet; or

2. Documentation of intrapulmonary arteriovenous
shunting by contrast-enhanced echocardiography or
macroaggregated albumin lung perfusion scan.
OR
F. Hepatic encephalopathy as described in 5.00D10, with 1
and either 2 or 3:
1. Documentation of abnormal behavior, cognitive
dysfunction, changes in mental status, or altered state
of consciousness (for example, confusion, delirium,
stupor, or coma), present on at least two evaluations
at least 60 days apart within a consecutive 6-month
period; and
2. History of transjugular intrahepatic portosystemic
shunt (TIPS) or any surgical portosystemic shunt; or
3. One of the following occurring on at least two
evaluations at least 60 days apart within the same
consecutive 6-month period as in F1:
a. Asterixis or other fluctuating physical
neurological abnormalities; or
b. Electroencephalogram (EEG) demonstrating
triphasic slow wave activity; or
c. Serum albumin of 3.0 g/dL or less; or
d. International Normalized Ratio (INR) of 1.5 or
greater.
OR
G. End stage liver disease with SSA CLD scores of 22 or
greater calculated as described in 5.00D11. Consider under a
disability from at least the date of the first score.

**Listing 11.02,** Epilepsy - convulsive epilepsy (grand mal or
psychomotor), must be documented by detailed description of a
typical seizure pattern, including all associated phenomena;
occurring more frequently than once a month, in spite of at least
3 months of prescribed treatment. With: A. Daytime episodes (loss

of consciousness and convulsive seizures) or B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

**Listing 11.03,** Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal), must be documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

**Listing 12.02** explains the qualifying organic mental disorders:

Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

1. Disorientation to time and place; or

2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or

3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or

4. Change in personality; or

5. Disturbance in mood; or

6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment

index clearly within the severely impaired range on
neuropsychological testing, e.g., Luria-Nebraska,
Halstead-Reitan, etc;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social
functioning; or

3. Marked difficulties in maintaining concentration,
persistence, or pace; or

4. Repeated episodes of decompensation, each of
extended duration;

OR

C. Medically documented history of a chronic organic mental
disorder of at least 2 years' duration that has caused more
than a minimal limitation of ability to do basic work
activities, with symptoms or signs currently attenuated by
medication or psychosocial support, and one of the
following:

1. Repeated episodes of decompensation, each of
extended duration; or

2. A residual disease process that has resulted in such
marginal adjustment that even a minimal increase in
mental demands or change in the environment would be
predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to
function outside a highly supportive living
arrangement, with an indication of continued need for
such an arrangement.